This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Lavert Renardo Finney has appealed from his conviction in the Summit County Court of Common Pleas for possession of cocaine, tampering with evidence, and assault of a peace officer. This Court affirms.
 I.
{¶ 2} In June 2001, Appellant was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A); one count of tampering with evidence, in violation of R.C. 2921.12(A)(1); and one count of assault of a peace officer, in violation of R.C. 2903.13(A). Appellant entered a plea of not guilty to the charges, and thereafter filed a motion to suppress in which he asserted that the police obtained certain evidence as the result of an unconstitutional arrest. After a hearing, the trial court denied Appellant's motion to suppress and set the matter for trial.
{¶ 3} Following a trial, a jury found Appellant guilty of all charges in the indictment. The trial court then sentenced Appellant to concurrent terms of imprisonment of three years for possession of drugs, six months for tampering with evidence, and six months for assault of a peace officer. The court also ordered Appellant to pay a fine of $2,500, and ordered the forfeiture of over $21,000 seized from Appellant during his arrest. This appeal followed, pursuant to our order granting Appellant's motion for leave to filed a delayed appeal. Appellant has asserted two assignments of error; we will review each in turn.
 II. Assignment of Error Number One
{¶ 4} "THE COURT ERRED WHEN IT DENIED [APPELLANT'S] MOTION TO SUPPRESS."
{¶ 5} In his first assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress evidence because the evidence was obtained after his arrest by police who did not have probable cause to believe that he had committed a crime. According to Appellant, the trial court therefore should have suppressed cocaine and money found subsequent to the unconstitutional seizure of his person as "fruit of the poisonous tree."
{¶ 6} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. We therefore accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998), 127 Ohio App.3d 414, 416.
{¶ 7} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution contains language nearly identical to that of the Fourth Amendment, "and its protections are coextensive with its federal counterpart." State v.Kinney (1998), 83 Ohio St.3d 85, 87, certiorari denied (1999),526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214. The exclusion of evidence obtained in violation of these provisions is an essential part of the constitutional guarantees against unlawful searches and seizures. SeeState v. Jones (2000), 88 Ohio St.3d 430, 434; Mapp v. Ohio (1961),367 U.S. 643, 655-656, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
{¶ 8} At the hearing on Appellant's motion, Sergeant Jeff McNeil of the Akron Police Department's Street Narcotics Uniform Detail ("SNUD") testified that he was driving an unmarked police cruiser in a known drug area on Akron's west side when he saw a dark blue car and a black Land Rover parked "hood to hood" on Hillwood Drive. Sergeant McNeil stated that he observed Appellant exit the driver's side of the Land Rover and get into the passenger side of the blue car. The sergeant testified that Appellant emerged from the blue car approximately thirty seconds later, and he saw Appellant place a large white bag down the front of his pants and return to the Land Rover. Sergeant McNeil testified that he suspected he had just witnessed a drug transaction, and radioed to uniformed officers in marked cruisers that were in the area to conduct an investigative stop.
{¶ 9} The sergeant stated that before the marked cruisers arrived, the driver of the blue car drove away and another vehicle took its place. According to the sergeant, the driver of the new car then exited his vehicle and climbed into the passenger seat of the Land Rover, and the uniformed officers arrived while both suspects were in the Land Rover. Sergeant McNeil stated that when he saw the marked cruisers arrive on the scene, he left the immediate area and did not see what transpired between the uniformed officers and the suspects.
{¶ 10} Detective Donnie Williams, who was part of the SNUD unit working with Sergeant McNeil, also testified at the hearing on Appellant's motion. Detective Williams stated that he was one of the officers who responded to the sergeant's call to conduct an investigative stop of the suspects in the Land Rover. Detective Williams averred that he parked in front of the Land Rover, exited his cruiser, and approached the passenger side of the second car. The detective stated that he was near the rear passenger door of the Land Rover when he saw Appellant put the vehicle in gear and pull up onto the curb. Detective Williams testified that he tried to get out of the way of the fleeing Land Rover, but was struck by the vehicle and almost knocked to the ground. The detective stated that the Land Rover pulled up onto the curb, drove around a police cruiser, and sped away northbound on Hillwood Drive.
{¶ 11} The detective stated that he and his partner then jumped into another cruiser and pursued the Land Rover eastbound onto Norway Drive. Detective Williams testified that at one point during the pursuit, the vehicle slowed down or stopped, the passenger door of the Land Rover flew open, and the door then closed and the vehicle sped away. The detective stated that he believed the passenger had jumped out of the vehicle, and Detective Williams and his partner stopped their cruiser and attempted to locate the passenger.
{¶ 12} Meanwhile, when Sergeant McNeil heard over his police radio from the officers on the scene that the Land Rover was fleeing, he proceeded eastbound on Copley Road. According to the sergeant's testimony, he observed the Land Rover run a red light at the intersection of Copley and Diagonal Roads, and continued to follow the vehicle until it came to a stop at Diagonal Road and Noble Avenue. Sergeant McNeil testified that Appellant then fled the Land Rover on foot, until he was apprehended by uniformed police in response to the sergeant's radio call. Detective Williams stated that, when Appellant was finally arrested, a plastic bag was found in the front of his pants containing approximately $16,000.
{¶ 13} Detective Adam Wahl, another member of Sergeant McNeil's SNUD unit, also testified at the suppression hearing. Detective Wahl stated that he arrived on the scene after Appellant had been apprehended, and at that time he and Sergeant McNeil retraced on foot the route taken by the fleeing Land Rover. Detective Wahl testified that he found a small bag on the side of one of the roads of that route, which was later determined to contain over one hundred twenty grams of powder cocaine.
{¶ 14} Detective Alan Jones, also of the Akron Police Department's SNUD unit, likewise testified at the hearing on Appellant's motion. Detective Jones testified that he was operating an unmarked cruiser near the intersection of Fernwood and Norway Drives when he first caught sight of Appellant's Land Rover as it proceeded eastbound on Norway Drive. According to Detective Jones, the passenger door of the Land Rover was partially open, and the door then closed as it turned the corner onto Norway Drive. Detective Jones testified that he then positioned his cruiser behind the Land Rover and followed it until the Land Rover went through the red light at the intersection of Copley and Diagonal Roads. Detective Jones stated that he stopped at the red light due to oncoming traffic, but Sergeant McNeil picked up pursuit of the Land Rover southbound on Diagonal Road until Appellant stopped the vehicle and fled on foot.
{¶ 15} Detective Jones further testified that, after Appellant was apprehended and arrested, he retraced the path of the Land Rover's flight. The detective averred that he found two bags that were each later determined to contain over one hundred twenty grams of cocaine near the corner of Norway and Hillwood Drives, in the approximate area where the he had earlier observed the passenger door of the Land Rover open and then close again.
{¶ 16} Finally, Detective Brian Callahan testified at the hearing. Detective Callahan stated that he was in the area in a marked cruiser and responded to Sergeant McNeil's request for uniformed officers to conduct an investigative stop of the suspects in the Land Rover. Detective Callahan testified that he was on the scene at Hillwood Drive when Appellant jumped the curb in the Land Rover and fled, striking Detective Williams and almost knocking him to the ground. Detective Callahan stated that after Appellant fled, he went to the address transmitted by Sergeant McNeil over the police radio where Appellant exited the Land Rover and ran away on foot. The detective testified that he then chased Appellant through back yards and eventually apprehended him, and other officers arrived and placed Appellant under arrest.
{¶ 17} On appeal, Appellant has argued that the trial court erred in failing to suppress the evidence against him because the state failed to meet its burden of demonstrating a constitutional basis for the warrantless arrest of Appellant. Appellant has contended that the evidence against him was "fruit of the poisonous tree" because it was obtained as the result of an arrest which the police did not have probable cause to effect.
{¶ 18} A warrantless arrest by an officer who does not have probable cause at the time of the arrest is constitutionally invalid.State v. Timson (1974), 38 Ohio St.2d 122, paragraph one of the syllabus. In order to have probable cause, "the arresting officer must have sufficient information derived from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused." Id; see, also, Beck v.Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. Once a defendant has shown a warrantless seizure and has adequately demonstrated that the basis of his challenge is lack of probable cause, the state bears the burden of proof on the issue of whether probable cause existed. Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus. Where a warrantless arrest violates constitutional probable cause requirements, evidence secured incident to the arrest is subject to the exclusionary rule. Timson, 38 Ohio St.2d at 131.
{¶ 19} At the conclusion of the hearing, the trial court denied Appellant's motion to suppress the money found on Appellant's person and the cocaine recovered from the route taken by Appellant in his flight from the police. In its order, the trial court stated that "the totality of the circumstances would indicate a drug transaction which justified the officer chasing and seizing [Appellant] and the contents of the `white plastic bag.'" The court's order further concluded that "all of the circumstances taken as a whole indicate good police work, not violations of the Constitution of the United States."
{¶ 20} We agree that the language of the trial court's order does not specifically identify the constitutional basis of the warrantless arrest or searches of Appellant. However, the language of the trial court's order appears to suggest that Sergeant McNeil's observation of Appellant stuffing a white plastic object down the front of his pants after a hasty encounter in the parked blue vehicle constituted probable cause to believe that Appellant had engaged in an illegal drug transaction.
{¶ 21} We need not reach the issue of whether Appellant's conduct as observed by Sergeant McNeil constituted probable cause to believe that Appellant was engaged in illegal drug activity, however, because the officers had probable cause to arrest Appellant on other grounds at the time they effected the arrest. Specifically, the testimony of Detectives Williams and Callahan established that they had probable cause to believe that Appellant had committed the offense of assault of a peace officer, a felony of the fourth degree, R.C. 2903.13(C)(3), when Appellant struck Detective Williams with the Land Rover in his flight from the officers. Although the trial court's order does not demonstrate that the officers' probable cause to arrest Appellant for the assault of Detective Williams was the reason for its conclusion that the arrest of Appellant was constitutional, we must affirm the judgment of the trial court if it is legally correct on other grounds. See State v. Payton (1997),124 Ohio App.3d 552, 557, appeal not allowed (1998), 81 Ohio St.3d 1511.
{¶ 22} Because the officers had probable cause to arrest Appellant, moreover, the cash subsequently found on his person was lawfully discovered during the course of a search incident to his arrest. "[A] full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of theFourth Amendment but is also a `reasonable' search under that amendment." Statev. Mathews (1976), 46 Ohio St.2d 72, 74, citing United States v.Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. "Pursuant to their authority to conduct a search incident to arrest, police are authorized to conduct a full search of the arrestee's person and the area within his immediate control[.]" State v. Myers (1997),119 Ohio App.3d 376, 380, citing Chimel v. California (1969), 395 U.S. 752,89 S.Ct. 2034, 23 L.Ed.2d 685.
{¶ 23} With respect to the cocaine recovered from the streets by the officers, the state has argued that the narcotics are not subject to exclusion pursuant to Fourth Amendment protections because Appellant had voluntarily abandoned the narcotics prior to any arrest or seizure of his person. It is well settled that "[a] defendant has no standing under theFourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned." State v.Freeman (1980), 64 Ohio St.2d 291, paragraph two of the syllabus, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94. "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." Freeman,64 Ohio St.2d at 297, quoting United States v. Colbert (C.A.5, 1973), 474 F.2d 174,176.
{¶ 24} In the case sub judice, Detectives Wahl and Jones testified that the cocaine that Appellant moved to suppress was recovered from the side of the roadway along the path of Appellant's flight from Hillwood Drive in the Land Rover. Appellant accordingly surrendered any expectation of privacy he might have had in the cocaine prior to the time the officers discovered the three bags in the public roadway.
{¶ 25} Finally, Appellant abandoned the narcotics before any seizure of his person had taken place, and the detectives' discovery of the cocaine is therefore not subject to attack as the "tainted fruit" of an unlawful seizure. The United States Supreme Court has held that a seizure of a person for Fourth Amendment purposes requires either an officer's application of physical force in restraining the individual, or an exercise of a "show of authority" with which the individual complies or submits. California v. Hodari D. (1991), 499 U.S. 621, 629,111 S.Ct. 1547, 113 L.Ed.2d 690. Assuming, arguendo, that the detectives' initial approach of Appellant while he was in the parked Land Rover constituted a "show of authority" sufficient to elevate their contact with Appellant beyond the bounds of a consensual encounter, Appellant was not seized at that time because he did not comply with or submit to that exercise of authority. See State v. Terry (1998), 130 Ohio App.3d 253, 257 ("Terry fled from Officer Isom after the officer activated his overhead lights in an attempt to stop Terry. The officer's activation of his overhead lights and pursuit of Terry were not a seizure.") On the contrary, Appellant shifted his vehicle into gear and took flight, striking Detective Williams in the process, and was not "seized" until he was later apprehended and arrested by the detectives. See State v. Brown (Dec. 28, 1994), 9th Dist. No. 16683, at 4 (concluding that cocaine discarded by fleeing defendant who did not yield to officers' show of authority was not obtained as the result of a seizure, but was voluntarily abandoned).
{¶ 26} Having determined that the money sought to be suppressed by Appellant was lawfully obtained during a search incident to his arrest and the cocaine was voluntarily abandoned prior to any seizure of his person, we find that Appellant's first assignment of error is not well taken.
 Assignment of Error Number Two
{¶ 27} "[APPELLANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, AND IN THE WAKE THEREOF DUE PROCESS AND A FAIR TRIAL, WHEN HIS COUNSEL UNNECESSARILY, AND FOR NO STRATEGIC REASON, CONCEDED A CRITICAL ASPECT OF THE STATE'S CASE HAD INDEED OCCURRED, I.E., THAT A LARGE DRUG TRANSACTION INVOLVING HIS CLIENT HAD ACTUALLY OCCURRED."
{¶ 28} In his second assignment of error, Appellant has argued that he was denied the effective assistance of counsel at trial. Specifically, Appellant has contended that counsel conceded in front of the jury that Appellant was involved in a drug transaction, thereby undermining his defense that he was never in possession or control of any drugs.
{¶ 29} A two-pronged test must be satisfied to determine that the right to effective assistance of counsel has been violated:
{¶ 30} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
{¶ 31} An appellant's demonstration of prejudice requires proof that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768. This Court must also consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The burden of proof is borne by the defendant, and he must overcome the strong presumption of the adequacy of counsel's performance and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100.
{¶ 32} In his opening statement to the jury, Appellant's counsel summarized what he anticipated would be the testimony of Sergeant McNeil regarding his initial observations of Appellant:
{¶ 33} "His testimony, I expect to be, is that he is proceeding along Copley, and he observes, looking northbound on Hillwood actually approximately four cars, and I believe that his testimony is going to be that these observations were made from approximately 300 feet away. And there are four vehicles or more that are parked along Hillwood.
{¶ 34} "Now, mind you, this is not — these are not events that happened in the dark of night. These are events that happened in the middle of the afternoon, in clear sunlight with — with children around, children in the street, people on their porches. It's a beautiful summer afternoon.
{¶ 35} "Now, the testimony is going to be that this large drug transaction happens in the middle of the street in broad daylight. And it's observed by a police officer from approximately 350 feet away.
{¶ 36} "Now, the testimony will be that upon seeing this, that this police officer radios and several other police officers converge on this area. However, no other vehicle is stopped. The testimony is that they see [Appellant] exit his vehicle, get into another vehicle, exit his vehicle, walk stiffly back into his vehicle and get in, yet the two officers or one that is testifying will testify that they converge from the north and converge from the south."
{¶ 37} During cross-examination of Sergeant McNeil, the following exchange took place between Appellant's counsel and the sergeant:
{¶ 38} "Q. Now, sir, you testified that you saw [Appellant] exit with a white bag and stuff it in his pants. In your mind, had a drug transaction occurred?
{¶ 39} "A. Absolutely.
{¶ 40} "Q. Okay. So the transaction had occurred, you had observed it, you could have simply stopped your vehicle, and he would have been stopped there, correct?
{¶ 41} "A. No. It's — it's too dangerous a situation."
{¶ 42} Appellant has argued that counsel's brief summary of Sergeant McNeil's anticipated testimony and his cross-examination of the sergeant constitute admissions to the jury that Appellant participated in an illegal drug transaction. However, Appellant has failed to demonstrate any deficiency in counsel's statements or questions that would amount to a violation of Appellant's constitutional right to effective representation. In his opening statement, counsel merely described for the jury what he expected Sergeant McNeil's testimony would be regarding his initial observations of Appellant. Even in the remarks Appellant relies upon in his argument that counsel "factualized the officer's assumptions," counsel prefaced his outline of the anticipated testimony no fewer than six times with phrases such as "Now, the testimony is going to be."
{¶ 43} The portion of counsel's cross-examination on which Appellant relies, moreover, is a continuation of counsel's line of questioning during which counsel elicited that the sergeant observed what, "in [the sergeant's] mind," was the occurrence of a drug transaction. (Emphasis added.) When the cross-examination is considered in context, it is manifestly clear that counsel was calling into question Sergeant McNeil's reaction to what he testified was his suspicion that a drug transaction had occurred, and was not admitting that the sergeant's suspicions were accurate.
{¶ 44} In sum, Appellant has failed to show that his trial counsel admitted to Appellant's participation in a drug transaction during either his opening statement or his cross-examination of Sergeant McNeil. Consequently, Appellant has failed to demonstrate any deficiency that denied him the effective assistance of counsel at trial. Appellant's second assignment of error is not well taken.
 III.
{¶ 45} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J. and BATCHELDER, J., CONCUR.