OPINION
{¶ 1} The defendant-appellant, Alex J. Wurth ("Wurth"), appeals two separate convictions and sentences from the Putnam County Court.
 {¶ 2} On April 20, 2005, Wurth entered the Wannamacher Tavern in Ottoville, Ohio to buy a pack of cigarettes. Enrique Ortega ("Ortega"), a patrolman with the Ottoville Police Department, was eating dinner in the tavern at the time Wurth entered. Ortega suspected Wurth may be intoxicated due to his concentrated efforts to walk and to speak articulately. Ortega left the tavern as Wurth was pulling away from his parking space, and Wurth did not stop when Ortega shouted to him. Ortega then pursued Wurth in his cruiser. Outside the village limits, Ortega observed Wurth swerving within his lane of travel and effectuated a traffic stop approximately two miles from the tavern. Ortega approached the vehicle and immediately asked Wurth if he had been drinking. As he spoke with Wurth, Ortega saw a rifle on the passenger side of the vehicle. Wurth reported that the gun was unloaded and gave it to Ortega. Upon inspection, Ortega noticed the action was open and contained a .22 caliber shell. Ortega did not administer any field sobriety test, and Wurth was arrested for a firearms violation. At the police station, Wurth submitted to a breath-alcohol test, which registered .159 grams of alcohol per 210 liters of breath.
 {¶ 3} On April 27, 2005, Wurth was charged with driving under the influence of alcohol, a violation of R.C. 4511.19(A)(1) and (4), a misdemeanor of the first degree, in Putnam County Court case number 2005-TRC-534, which is before us as appellate case number 12-05-17. Wurth was also charged with the improper handling of firearms in a motor vehicle, a violation of R.C.2923.16(D)(2), a felony of the fifth degree, in Putnam County Court case number 2005-CRA-221, which is before us as appellate number 12-05-18. On May 9, 2005, Wurth filed a motion to dismiss, or in the alternative, to suppress all evidence, which the trial court overruled in its July 28, 2005 judgment entry. The court held a joint change of plea hearing on August 25, 2005. Wurth pled no contest to both driving under the influence of alcohol and an amended charge of using a weapon while intoxicated, a violation of R.C. 2923.15, a misdemeanor of the first degree. The trial court imposed sentence at that time. Wurth appeals the convictions and sentences and asserts the following assignment of error:
The assignment of error is that the lower court erred in itsorder which overruled Defendant's motion to dismiss and or [sic]suppress for the reason that the same is contrary to both thefacts of the case and the law of the State of Ohio.
 {¶ 4} The appeal of a trial court's decision on a motion to suppress evidence presents a mixed question of law and fact.State v. Dixon, 141 Ohio App.3d 654, 658, 2001-Ohio-2120,752 N.E.2d 1005. Because the trial court determines the weight of the evidence and witness credibility during a suppression hearing, we are bound to accept its findings of fact if supported by competent, credible evidence. State v. Norman,136 Ohio App.3d 46, 51, 52, 1999-Ohio-961, 735 N.E.2d 953 (citations omitted);State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. However, we review de novo whether those facts meet the applicable legal standard. Dixon, supra at 659 (citing Statev. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034).
 {¶ 5} In his sole assignment of error, Wurth argues that Ortega did not comply with the statutory requirements of hot pursuit when he effectuated the traffic stop because he did not observe a violation within his territorial jurisdiction. Wurth also contends that Ortega lacked reasonable suspicion or probable cause to effectuate the stop. In response, the State of Ohio ("State") contends that Ortega "perceived a misdemeanor violation of driving under the influence occurring within his jurisdiction", began his pursuit within the territorial boundaries of Ottoville Village, and was in hot pursuit at the time of the stop. The State argues there was reasonable suspicion because Ortega observed Wurth walking lethargically, speaking slowly, and driving erratically.
 {¶ 6} The Fourth Amendment of the United States Constitution prohibits warrantless searches and seizures, which renders them per se unreasonable unless an exception applies. See Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507,19 L.Ed.2d 576. An investigative stop, or Terry stop, is a common exception to the warrant requirement. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. When a police officer stops a vehicle and detains its occupants, he has "seized" it and its occupants within the meaning of the Fourth andFourteenth Amendments of the United States Constitution. See Terry, supra at 8, 9. Before stopping a vehicle, the officer must have a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent. State v. Chatton (1984), 11 Ohio St.3d 59, 61,463 N.E.2d 1237, certiorari denied, 469 U.S. 856, 105 S.Ct. 182,83 L.Ed.2d 116. Whether an officer had reasonable suspicion for a stop is determined based on the totality of the circumstances.State v. Terry (3rd Dist. 1998), 130 Ohio App.3d 253, 257,719 N.E.2d 1046 (citing State v. Andrews (1991),57 Ohio St.3d 86, 87, 565 N.E.2d 1271).
 {¶ 7} Absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule.State v. Weideman, 94 Ohio St.3d 501, 504, 2002-Ohio-1484,764 N.E.2d 997 (citing Kettering v. Hollen (1980),64 Ohio St.2d 232, 234-235, 416 N.E.2d 598). Therefore, we must determine if Ortega violated the hot pursuit statute. Our first question is whether Ortega was authorized to pursue Wurth outside the territorial limits of Ottoville Village. If he was, the next question is whether Ortega complied with statutory mandates of R.C. 2935.03(D), the hot pursuit exception.
 {¶ 8} R.C. 2935.03(A) authorizes an officer to arrest and detain a person who was found violating a law of the state within the officer's territorial jurisdiction. However, R.C. 2935.03(D) provides an exception to the general rule, commonly known as hot pursuit.
If a * * * municipal police officer, * * * is authorized bydivision (A) or (B) of this section to arrest and detain,within the limits of the political subdivision, a person until awarrant can be obtained, the peace officer, outside the limits ofthat territory, may pursue, arrest, and detain that person untila warrant can be obtained if all of the following apply:
 (1) The pursuit takes place without unreasonable delay afterthe offense is committed;
 (2) The pursuit is initiated within the limits of thepolitical subdivision, * * * in which the peace officer isappointed, employed, or elected or within the limits of theterritorial jurisdiction of the peace officer;
 (3) The offense involved is a felony, a misdemeanor of thefirst degree or a substantially equivalent municipal ordinance, amisdemeanor of the second degree or a substantially equivalentmunicipal ordinance, or any offense for which points arechargeable pursuant to section 4510.036 of the Revised Code.
(emphasis added). The Twelfth District Court of Appeals has held that "a police officer has authority to pursue, stop and detain a suspected intoxicated driver under R.C. 2935.03(D) when the requirements of that section are met." State v. Hornsby,
12th Dist. No. CA99-06-060, 2000 WL 197249, at * 2 (citations omitted). The court reasoned, "[a]lthough R.C. 2935.03(C) provides a police officer with the specific authority to arrest and detain individuals suspected of driving while intoxicated, R.C. 4511.19 is an `Ohio law' for which an officer is granted authority to detain and arrest under R.C. 2935.03(A)." Id. We agree with the court's analysis in part.
 {¶ 9} Although R.C. 2935.03(C) does provide the authority to stop and detain drivers for suspected violations of R.C. 4511.19, the statute pertains to drivers of vehicles regulated by the public utilities commission under Title XLIX of the Revised Code. Here, as in Hornsby, a private citizen was operating a non-commercial, private vehicle. Therefore, we agree with the Twelfth District in so far as R.C. 4511.19 is a state law, and a peace officer is authorized to enforce that law within his territorial jurisdiction pursuant to R.C. 2935.03(A). Because Ortega was enforcing R.C. 4511.19, a state law, under R.C.2935.03(A), he was authorized to pursue Wurth outside the jurisdiction pursuant to R.C. 2935.03(D).
 {¶ 10} The next question is whether Ortega complied with R.C.2935.03(D) when he followed Wurth outside of his territorial jurisdiction. R.C. 2935.03(D)(3) authorizes a peace officer to pursue a person who is committing, or has committed, a first degree misdemeanor. R.C. 2935.03(D)(1) requires the pursuit to take place without an unreasonable delay after the offense was committed. The trial court made the following findings of fact:
[Ortega] observed the Defendant to be walking slowly andlethargically, his speech was slow and concentrated, havingtrouble enunciating. The Defendant appeared to be eitherintoxicated or under the influence of drugs as per thePatrolman's observation and years of experience and training.
 When the Defendant walked toward the door and then through thedoor to the outside, the Patrolman got up from the bar and triedto get outside to talk to the Defendant. By the time thePatrolman exited the tavern, the Defendant had entered hisvehicle and driven off. Although the Patrolman yelled at theDefendant to stop, and waved his hands, apparently the Defendantdid not see him and kept on proceeding in a westerly direction onRoute 224 in the Village of Ottoville.
 The Patrolman then went to his vehicle and attempted to catchup with the Defendant through the Village of Ottoville and thenoutside the Village limits[.]
J. Entry, Jul. 28, 2005, ¶¶ 2, 3-4. We must accept these facts as they are supported by competent, credible evidence in the record. Because Ortega believed Wurth was intoxicated, he followed Wurth outside the tavern and saw him drive a vehicle. Therefore, Ortega witnessed a violation of R.C. 4511.19. When Ortega's first attempt to stop Wurth failed, he immediately went to his marked cruiser and pursued Wurth's vehicle. We cannot find an unreasonable delay between the offense and pursuit, and R.C.2935.03(D)(1) and (3) are satisfied. There is no dispute that the offense of driving under the influence occurred in Ottoville Village, and, as noted above, Ortega was authorized to enforce the law within the village limits. Therefore, R.C. 2935.03(D)(2) is also satisfied, and Ortega was in hot pursuit when he effectuated the traffic stop outside his territorial jurisdiction.
 {¶ 11} Wurth also argues that Ortega had no probable cause to effectuate the traffic stop. In its findings of fact, the trial court noted that Ortega observed Wurth "weaving within his lane of travel and crossing the center line on several occasions, then jerking back into Defendant's lane of travel." J. Entry, at ¶ 4. Based on these facts, the officer would have probable cause to effectuate a traffic stop based on a left of center traffic violation. See Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 135 L.Ed.2d 89; Dayton v. Erickson,76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091, at syllabus. However, these facts are not supported by competent and credible evidence. Instead, the record indicates that although Wurth was driving erratically by weaving within his own lane outside the village limits, he never crossed the white edge line or the yellow centerline. Hearing Tr., Oct. 14, 2005, 14:11-15; 29:19-25; 30:1-3; 31:18-22. We note that Wurth's weaving was done in a jerky, erratic manner, and not the type of smooth, gradual drifting that many unimpaired drivers do every day.
 {¶ 12} Despite the deficiency in the trial court's findings of fact, the totality of the circumstances supports a finding of reasonable suspicion. Ortega had reasonable suspicion to effectuate a traffic stop based solely on his observations at the tavern. However, considering the totality of the circumstances, we must factor into the equation that Wurth was driving 35 miles per hour in a 50 mile per hour speed limit zone and driving erratically within his own lane of travel. Id. at 12:4-7; 13:19-23. See also State v. Potter, 3rd Dist. No. 14-89-13, 1990 WL 121489, at * 2 (reasonable suspicion that law was being violated when officer observed defendant's vehicle traveling at a slower speed than the traffic flow and weaving from side to side). Therefore, Ortega had reasonable suspicion to make the stop, and the sole assignment of error is overruled.
 {¶ 13} The judgments of the Putnam County Court are affirmed.
Judgments affirmed.
 Cupp and Rogers, JJ., concur.