The STATE of Ohio, Appellee

v.

TERRY, Appellant.

[Cite as *State v. Terry* (1998), 130 Ohio App.3d 253.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–98–24.

Decided Oct. 30, 1998.

254

*Jim Slagle,* Marion County Prosecuting Attorney, and *Renee L. Potts,* Assistant Prosecuting Attorney, for appellee.

*Daniel E. Shifflet & Co., L.P.A.,* and *Kevin P. Collins,* for appellant.

---

THOMAS F. BRYANT, Judge.

Donald Terry, Jr. appeals his conviction entered on a jury verdict in the Court of Common Pleas of Marion County. Terry was convicted of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B)(C)(3), a fourth-degree felony.

At 9:50 a.m. on Tuesday, January 6, 1998, Officer Isom of the Marion Police Department observed Terry driving a white Ford Thunderbird automobile east on Center Street in Marion, Ohio. Officer Isom, driving a police cruiser, was traveling along the same road, but behind Terry. Officer Isom testified that though Terry was traveling "at a normal rate of speed and everything" he did notice that he could not "get a good reading" on the Ohio temporary tag positioned to the left side of Terry's rear window. Officer Isom explained that the license placard was only partially taped to the rear window and was hanging in such a manner as to conceal some numbers on the tag.

Officer Isom radioed dispatch with the letters and numbers that he thought were on the tag, but was advised the tag was listed as "nothing in file." Officer Isom stated he thought this was "unusual" and decided to "[h]it my lights to stop the vehicle to advise the subject to stick it, you know, where you could see it or

retape it." However, once Officer Isom activated his overhead red and blue lights, Terry continued to drive east on Center Street. Officer Isom followed.

Once Terry approached the intersection of Center and Greenwood, he drove through a red light while turning left onto Greenwood. Officer Isom then activated his siren and pursued Terry down Greenwood, reaching speeds in the "mid 50s." The chase continued through several more intersections, through a grocery store parking lot and into a residential neighborhood until Terry finally stopped his vehicle on Fairwood road. Once Terry stopped, he put his hands outside the driver's side window and was instructed to exit his car by Officer Isom and Officer Gordon, another officer who arrived to assist Isom. Officer Gordon handcuffed Terry and heard Terry state that he ran from Officer Isom because he thought warrants were outstanding for his arrest. Upon his conviction, Terry was sentenced to twelve months' incarceration. He now takes this appeal.

Terry raises eight assignments of error.

## I

Prior to trial, Terry filed a motion requesting an order "suppressing all evidence obtained *as a result of the stop and arrest.*" (Emphasis added.) After a hearing, his motion to suppress was denied.

In this regard, Terry's sixth assignment of error states:

"The trial court erred to the prejudice of defendant-appellant when it denied his motion requesting suppression of all evidence obtained as a result of the stop and arrest because said stop was illegal and lacked probable cause, and that the manner of arrest was so unreasonable as to render it illegal under the Fourth Amendment to the United States Constitution and Article I, § 14, of the Ohio Constitution."

■ The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272. Evidence obtained in violation of this protection may not be used against the person from whom it was improperly obtained. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

■ This rule of exclusion, however, suppresses only the fruits of unreasonable searches or seizures. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Therefore, only evidence obtained *after* a person has suffered an unreasonable search or seizure is excludable under this rule. See

*California v. Hodari D.* (1991), 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690, 699. In *Hodari D.*, the United States Supreme Court stated, "The word 'seizure' * * * does not remotely apply * * * to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. * * * An arrest requires *either* physical force * * * *or,* where that is absent, *submission* to the assertion of authority." (Emphasis *sic.*) *Id.,* 499 U.S. at 626, 111 S.Ct. at 1550–1551, 113 L Ed.2d at 697.

Here, Terry fled from Officer Isom after the officer activated his overhead lights in an attempt to stop Terry. The officer's activation of his overhead lights and pursuit of Terry were not a seizure. Therefore, because Terry's statement to the officers was the only evidence obtained *after* he stopped, only that evidence must be suppressed if improperly obtained. *Hodari D., supra.*

Brief investigatory stops are permissible if a police officer has a reasonable suspicion that criminal activity is afoot based on the totality of the circumstances. *Andrews,* 57 Ohio St.3d at 87, 565 N.E.2d at 1273. "Fail[ing] to display [a] temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle" is a violation of R.C. 4503.21 and is punished as a minor misdemeanor under R.C. 4503.99(B).

Here, Officer Isom testified that he could not read the temporary license tag that was only partially taped to the rear window of Terry's vehicle. Terry offered no evidence to dispute the officer's recollection of how the tag was affixed. Clearly, if a temporary tag is affixed in such a manner that it cannot be read, it is not displayed in plain view. R.C. 4503.21. Therefore, under the totality of the circumstances here, Officer Isom had reasonable suspicion justifying his attempt to stop Terry. *Andrews, supra.* Further, once Terry fled from Officer Isom, increasing his speed and traveling through several intersections in violation of other traffic laws, Officer Isom's justification for eventually stopping Terry is clear.

Finally, Terry claims that evidence resulting from his stop should be suppressed because the manner in which Officer Isom stopped him was so unreasonable that it violated his rights under the Fourth Amendment to the United States Constitution. However, the arrest of Terry involved no undue physical force, and none is claimed. Once Terry stopped his vehicle, the arresting officers merely asked Terry to exit his vehicle, and then he was handcuffed. This manner of arrest or seizure was not so unreasonable or outrageous so as to violate Terry's Fourth Amendment protection under the United States Constitution or his rights under Section 14, Article I, Ohio Constitution. See *United States v. Holloway* (1995), 906 F.Supp. 1437 (officer's use of pepper spray to force a suspect's mouth open to retrieve inculpatory

evidence was not so unreasonable or outrageous so as to constitute an unreasonable search and seizure).

Terry's motion to suppress was properly denied, and, accordingly, his sixth assignment of error is overruled.

## II

Terry's remaining assignments of error concern events at trial.

Terry's first assignment of error claims:

"The trial court erred to the prejudice of defendant-appellant by denying his motion requesting a continuance or, in the alternative, excluding the evidence disclosed by the state at the last minute."

Here, Terry claims the trial court erred when it denied his request for a discovery sanction pursuant to Crim.R. 16(E)(3) because the state first disclosed four days before trial *the existence* of twenty-five photographs and a videotape of the route of pursuit to be used at trial. Terry requested that the court exclude these exhibits, or, in the alternative, continue the trial to permit defense examination and challenge to them. The court did neither. The state disclosed these items by filing a supplemental notice of discovery on Thursday, March 26, 1998. Terry's trial was scheduled to commence the following Monday, March 30, 1998.

The trial court did not address Terry's motion to exclude exhibits or continue the trial until the day of trial and *after* the jury had been sworn. After the court overruled Terry's objections to these exhibits, the state called as its first witness Detective Oaklief, who the state concedes was not disclosed prior to trial. The record is not clear why Detective Oaklief was permitted to testify over Terry's objection. The court stated only that the prosecutor's failure to disclose the detective was not "so heinous as to cause that type of problem."

Detective Oaklief made the videotape of the pursuit route. Defending its failure to disclose that Detective Oaklief would be a state's witness, the state argues that Terry should have "expect[ed] that *a* witness would testify authenticating the tape." (Emphasis *sic.*) Even if the state limited Detective Oaklief's testimony to authenticating the videotape, which it did not, this argument is unpersuasive. Expecting testimony from an undisclosed witness relating to an unexpected exhibit defies reason. While Terry may very well have expected more surprises from the state, the late disclosure of one state exhibit can hardly provide a basis to excuse the complete nondisclosure of a witness testifying thereto. Crim.R. 16(B)(1)(e) requires the prosecutor to "furnish to the defendant a written list of the names and addresses *of all witnesses* whom the prosecuting

attorney intends to call at trial." (Emphasis added.) Clearly, the state's failure to disclose Detective Oaklief violated this discovery rule.

Further, Crim.R. 16(A) states that "[u]pon written request each party shall forthwith provide the discovery herein allowed." The discovery allowed the defendant a defense that includes the right "to inspect and copy * * * photographs, tangible objects * * * or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of [his] defense, or are intended for use by the prosecuting attorney as evidence at trial." Crim.R. 16(B)(1)(c). The state argues that the twenty-five photographs and the videotape that were disclosed just days before trial were merely demonstrative exhibits of evidence already disclosed to the defense in the form of police reports that describe the route of the pursuit. While it may be arguable that the photographs merely depict scenes along the route of the pursuit, we cannot say the same for the videotape.

Detective Oaklief testified that the videotape not only depicts the route traveled by Officer Isom when chasing Terry, but does so from the vantage point of a motorist traveling at a rate of only twenty to twenty-five mph. On cross-examination, Oaklief explained that though the speed limit along the main road traveled during the pursuit was thirty-five mph, he selected twenty to twenty-five mph because that speed was "an average speed limit for the different speed zones" along the pursuit route.

The state's intended use of the videotape, along with Detective Oaklief's testimony, is apparent from comments made by the prosecutor during trial. The prosecutor argued that the video should not be excluded from evidence despite the defense objection because "the videotape's helpful in demonstrating the route of travel, giving [the jury] a feel for the speed and that kind of thing. The testimony will demonstrate the speed traveled throughout the video is twenty-five miles per hour. Gives a good frame of reference to appreciate the speeds of the Defendant."

Further, in her opening statement to the jury the prosecutor stated:

"You will have an opportunity to see a video tape that's taken traveling at the rate of twenty-five miles per hour, but Officer Isom will testify the Defendant was driving much faster throughout the majority of this. *This will just give you an idea of what it's like at those intersections just at twenty-five miles per hour. So you will be able to imagine how quickly they come upon you when you're driving fifty or more,* as the testimony will be." (Emphasis added.)

Finally, the prosecutor played the videotape for Officer Isom in the presence of the jury and asked Officer Isom if the speeds Terry traveled during the pursuit were slower or faster than depicted on the video. Officer Isom responded that

Terry's speeds were faster. Officer Isom did admit on cross-examination that the speed limit on Greenwood Street was thirty-five mph and that the normal rate of speed by motorists on that road was over forty mph. In fact, Officer Isom stated that he does not issue speeding tickets to motorists traveling on that road unless they reach speeds of forty-seven to forty-eight mph.

Clearly the state did not use the videotape merely to depict the route of travel by Terry and Officer Isom. Rather, the state used the video to re-create the chase in a moving-picture format. However, the moving picture offered by the state was at speeds below the posted speed limit and well below speeds normally traveled by the motoring public. Further, the state asked the jury when viewing the videotape to appreciate what that route looks like when in a moving vehicle at only twenty to twenty-five mph and then imagine what speeds twice that rate must have looked like.

■ When a discovery violation occurs, the appropriate sanction is generally left to the discretion of the trial court. Crim.R. 16(E)(3); *State v. Scudder* (1994), 71 Ohio St.3d 263, 268, 643 N.E.2d 524, 529. The Ohio Supreme Court has held that a trial court does not abuse its discretion when admitting the testimony of an undisclosed witness if (1) "the failure to provide discovery was not willful," (2) "foreknowledge of the statement would not have benefited the defendant in the preparation of the defense," and (3) "the defendant was not prejudiced by the admission of the evidence." *State v. Heinish* (1990), 50 Ohio St.3d 231, 236, 553 N.E.2d 1026, 1032, citing *State v. Parson* (1983), 6 Ohio St.3d 442, 445–446, 453 N.E.2d 689, 692. This standard of review applies equally to other evidence not properly disclosed by the state but admitted at trial. *Scudder*, 71 Ohio St.3d at 269, 643 N.E.2d at 530.

First, though Terry requested discovery pursuant to Crim.R. 16, the state belatedly disclosed the videotape and did not disclose witness Oaklief. The prosecutor offers no explanation for not disclosing Oaklief other than stating that the defendant should have expected somebody to testify for authentication purposes. As noted, this argument is unpersuasive. Once a criminal defendant requests discovery under the Crim.R. 16, what they should *expect* from the state is compliance with that rule. The state's argument, that its breach of this rule should be excused because Terry failed to expect the state would call an undisclosed witness to give testimony with respect to a belatedly disclosed exhibit, does not convince us that their discovery violation was not willful. *Heinish*, 50 Ohio St.3d at 236, 553 N.E.2d at 1032.

The second and third prongs of the *Heinish* inquiry ask whether foreknowledge of the videotape, together with Detective Oaklief's testimony, would have benefited Terry in the preparation of his defense and whether this undisclosed material prejudiced his defense. As noted, Detective Oaklief's testimony account-

ed for more than mere authentication of the videotape. The state used his testimony and the videotape to provide the jury a basis from which it was expected to imagine circumstances of the crime. Foreknowledge of this evidence would clearly have benefited Terry in the preparation of his defense.

Further, the only disputed fact issue before the jury was whether Terry created a substantial risk of serious physical harm during his flight from Officer Isom. Therefore, because the videotape and Detective Oaklief's testimony were used to compare imagination of the real pursuit with an actual one constructed under different conditions, months later and at different speeds, the admission of this evidence without at least affording Terry a continuance to prepare his defense to it did unfairly prejudice his defense and was an abuse of discretion. *Heinish, supra;* see also, *State v. Wilson* (1993), 91 Ohio App.3d 611, 632 N.E.2d 1384 (trial court abused its discretion when refusing to continue trial after the prosecution disclosed a crucial witness the day before trial).

The state argues that the court's cautionary instruction to the jury cures any prejudicial impact the photos and videotape may have had. The court did instruct the jury, *prior to the state's opening statement,* that the photos and videotape were "not meant to depict the way things—the way the situation was when these events occurred on January [6], 199[8]. * * * There may be things out of place." However, cautioning the jury about the inherently prejudicial qualities of part of this evidence did nothing to relieve that prejudice.

Accordingly, Terry's first assignment of error is sustained. Terry's remaining assignments of error are overruled as moot. This cause must be remanded for further proceedings consistent with this opinion.

The order denying Terry's motion to suppress is affirmed, and the judgment of conviction is reversed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SHAW, P.J., and HADLEY, J., concur.