OPINION
{¶ 1} The defendant-appellant, Benjamin J. Andrews, appeals the judgment of the Auglaize County Municipal Court convicting him of operating a motor vehicle while intoxicated. On appeal, Andrews contends the trial court erred when it denied his suppression motion concerning the stop of his vehicle. For the reasons set forth herein, we affirm the judgment of the trial court.
 {¶ 2} On December 16, 2006 at approximately 2:45 a.m., Tim Wenger, a trooper with the Ohio State Highway Patrol, was sitting stationary in a marked patrol car watching traffic traveling northbound on Interstate 75. Wenger noticed Andrews' truck driving northbound in the far right lane and decided to follow it; however, Wenger's decision was random and not based on any observed traffic violations or erratic driving. As he followed Andrews' truck, Wenger noticed the vehicle weave within its lane of travel two times. Wenger activated the video camera in his patrol car and continued to follow Andrews' truck. After the camera was on, Andrews' truck drifted to the left so that the driver's side tires were near the white dashed line dividing the northbound lanes for five to seven seconds. Andrews' truck also drifted to the far right side of the lane approximately five or six more times.
 {¶ 3} Andrews used his right turn signal and exited I-75 at its intersection with U.S. Route 33. At the end of the exit ramp, Andrews' truck came to a complete stop and signaled a right-hand turn onto Route 33. As he turned onto Route 33, Wenger activated the overhead lights on the patrol car. Andrews' truck *Page 3 
signaled a left hand turn, made the left hand turn onto Cemetery Road, and pulled over to the side of the road. Wenger then approached the vehicle and identified the driver as Andrews, who was subsequently arrested for a violation of R.C. 4511.19(A)(1)(a), driving under the influence of alcohol.
 {¶ 4} On April 16, 2007, Andrews filed a suppression motion challenging the stop. The trial court held an evidentiary hearing on May 15, 2007 and issued its decision on May 17, 2007 denying Andrews' motion. On July 13, 2007, the trial court held a change of plea hearing, and Andrews withdrew his previously tendered plea of not guilty and entered a plea of no contest. The trial court found Andrews guilty and imposed sentence. Andrews appeals the decision of the trial court and raises one assignment of error for our review.
 Assignment of Error The trial court erred in failing to suppress all of the evidence against the defendant that arose from his illegal stop by the officer of the Ohio State Highway Patrol.
 {¶ 5} In support of his sole assignment of error, Andrews argues Wenger did not have a reasonable, articulable suspicion that would have permitted him to effectuate the traffic stop. Andrews contends Wenger testified that his vehicle:
 touched the centerline between the two lanes once; that he weaved eight (8) times in five miles; that he always was under the posted speed limit; that he used his turn signal when he exited I-75 onto U.S. Rt. 33; that he slowed down appropriately and executed the sharp turns of the exit without any problems; that he stopped properly at the stop sign at the bottom of the exit; that he used his turn signal when he went right (eastbound) on U.S. Rt. 33; and that he executed a safe merge onto U.S. 33 *Page 4 and a safe left turn, using his turn signal, onto Cemetery Road, without any problems.
Andrews asserts that even if the testimony is accurate, based upon the totality of the circumstances, Wenger did not have a reasonable, articulable suspicion to effectuate a traffic stop.
 {¶ 6} In response, the state claims Wenger had a reasonable, articulable reason for the stop based on Andrews' "weaving" on the highway. An investigatory stop is warranted in such situations even where the officer does not suspect criminal activity because the officer also has the duty to protect the public safety. In the alternative, the state argues Wenger had probable cause to effectuate the stop because Andrews committed a marked lanes violation by driving his tires on the dashed centerline separating the northbound lanes. The state compares driving on the dashed centerline separating same-direction lanes of travel to driving on the double yellow centerline separating opposite-direction lanes of travel to support its argument.
 {¶ 7} In considering a motion to suppress, the trial court is required to make both factual and legal determinations. State v. Blandin, 3d Dist. No. 1-06-107, 2007-Ohio-6418, at ¶ 38, citing State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, citing Ornelas v.United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657,134 L.Ed.2d 911. When a trial court's decision on a suppression motion is appealed, we are required to review issues of law de novo. Id., citingJones. However, we must uphold the trial court's findings of fact if they are supported by *Page 5 
competent, credible evidence because the trial court is in the best position to observe the witnesses' demeanors and evaluate credibility. Id., citing State v. Dunlap, 73 Ohio St.3d 308, 314, 1995-Ohio-243,652 N.E.2d 988; State v. Carter, 72 Ohio St.3d 545, 552, 1995-Ohio-104,651 N.E.2d 965; State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
 {¶ 8} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 19 L.Ed.2d 576. Although the government may not unreasonably intrude into areas where people have a legitimate expectation of privacy without a search warrant, there are exceptions, which allow warrantless searches and seizures. Id., citing United States v. Chadwick (1977),433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538, overruled on other grounds inCalifornia v. Acevedo (1991), 500 U.S. 565, 111 S.Ct. 1982,114 L.Ed.2d 619. An investigative stop, or Terry stop, is a common exception to the warrant requirement. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. When a police officer stops a vehicle and detains its occupants, he has "seized" it and its occupants within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution. See Terry, at 8, 9. Before stopping a vehicle, the officer must have a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent. State v.Chatton (1984), 11 Ohio St.3d 59, 61, 463 N.E.2d 1237, *Page 6 
certiorari denied by 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116. Whether an officer had reasonable suspicion for a stop is determined based on the totality of the circumstances. State v. Terry (1998),130 Ohio App.3d 253, 257, 719 N.E.2d 1046, citing State v. Andrews (1991),57 Ohio St.3d 86, 87, 565 N.E.2d 1271.
 {¶ 9} "However, the reasonable, articulable suspicion need not be a suspicion of criminal activity." State v. Purtee, 3d Dist. No. 8-04-10,2006-Ohio-6337, at ¶ 9, citing State v. Norman, 136 Ohio App.3d 46,53-54, 1999-Ohio-961, 735 N.E.2d 453. In Purtee, we held:
 "Clearly, under appropriate circumstances a law enforcement officer may be justified in approaching a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity. See State v. Langseth (N.D. 1992), 492 N.W.2d 298, 300; State v. Brown (N.D. 1993), 509 N.W.2d 69; People v. Murray (1990), 137 Ill.2d 382, 148 Ill.Dec. 7, 560 N.E.2d 309; Crauthers v. Alaska (Alaska App. 1986), 727 P.2d 9; State v. Pinkham (Me. 1989), 565 A.2d 318; State v. Marcello (Vt. 1991), 157 Vt. 657, 599 A.2d 357; State v. Oxley (N.H. 1985), 127 N.H. 407, 503 A.2d 756. Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out `community caretaking functions' to enhance public safety. The key to such permissible police action is the reasonableness required by the Fourth Amendment. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base her safety concerns. Such a requirement allows a reviewing court to answer Terry's fundamental question in the affirmative: `would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief' that the action taken was appropriate?"' [Terry], 392 U.S. at 21-22."
Id., quoting Norman, at 54. *Page 7 
 {¶ 10} At the suppression hearing held on May 15, 2007, Wenger was the only witness to testify. Wenger testified that he was employed as a trooper by the Ohio State Highway Patrol. (Hearing Tran., Sep. 24, 2007, at 2). Wenger stated that on December 16, 2006 at approximately 2:45 p.m., he was sitting in his marked patrol car, which was stationary and just slightly north of milepost 105 on I-75. (Id. at 5; 24). Wenger was facing eastbound so he could observe the northbound lanes of the highway. (Id. at 5). Wenger observed Andrews' truck pass him in the far right lane and decided to follow the vehicle because he periodically picks a random vehicle and follows it. (Id. at 5; 17-18). Wenger observed the truck "going back and forth within his lane, from line to line[,]" so he activated the video camera in his car. (Id.). After the camera was activated, Wenger testified that the truck drove on the dashed centerline between the northbound lanes for five to seven seconds and weaved to the right several more times. (Id. at 6). Wenger stated that the weaving made him suspicious, and he always stops motorists who are weaving because the driver may be tired and he would like to prevent a collision. (Id. at 8). He also indicated that the driver of a weaving vehicle may be impaired or "a number of things." (Id.).
 {¶ 11} On cross-examination, Wenger stated that prior to activating the video camera, he followed Andrews' truck for approximately one mile to one and one half miles and observed the truck swerve to the right two times within that distance. (Id. at 22). At that time, he made the decision to activate his video camera. (Id.). Wenger testified that after the video camera was turned on, he *Page 8 
observed Andrews' truck swerve to the right, without crossing the white edge line, probably six times. (Id.). After the video camera was turned on, Wenger followed Andrews to exit number 110, which is just slightly north of milepost 110. (Id. at 24). Within approximately five miles, Wenger observed Andrews' truck weaving within its lane approximately eight times. (Id. at 25). During the hearing, the video recorded by Wenger was played for the trial court. (Id. at 14-15).
 {¶ 12} The trial court determined that Wenger had a reasonable, articulable suspicion to justify the traffic stop. In so doing, the court stated:
 [t]he evidence from the video and the statement of the officer indicate that there was weaving within the defendant's lane of travel during the early part of the officer following the defendant. During the last minute before the defendant exited I75 the defendant resumed the weaving to and away from the right edge line. If the defendant had not begum [sic] to weave towards the end of his travels on I75 the Court believes that the officer would have lost any right to pull the defendant over. However, the resumption of weaving justified the investigatory stop of the defendant's vehicle.
(J. Entry, May 17, 2007, at 2). We have also reviewed the contents of the video tape taken from Wenger's patrol car. We note that the "weaving" testified to by Wenger was more than a gradual, minimal drifting within the lane. Instead, the vehicle, which appears to be a relatively narrow Ford Ranger, veered toward the left side of the lane rather suddenly. Having swerved to the far left side of his lane, Andrews did not correct his driving; instead, he stayed near, if not on, the dashed white line separating the northbound lanes for five to seven seconds. Each time the truck veered to the far right side of the lane, the movement was sudden *Page 9 
and pronounced, even though the truck did not touch or go over the right edge line. As Wenger testified, the truck swerved to the right side of the lane approximately six times on the video.
 {¶ 13} Based on the totality of the circumstances in this case, there was a reasonable, articulable suspicion entitling Wenger to conduct an investigatory stop. At nearly 3:00 a.m., such driving could just as easily evidence a fatigued driver as an intoxicated driver, both of which present dangers to themselves and other drivers. See generallyPurtee; Willoughby Hills v. Auletta, 11th Dist. No. 2004-L-172, 2005-Ohio-5279. We also note that this Court has previously upheld trial courts' denials of suppression motions where the defendants were found to have been weaving within their own lane, so long as such driving was erratic. See State v. Wurth, 3d Dist. Nos. 12-05-17 and 12-05-18, 2006-Ohio-608, at ¶ 12 (driving slower than the posted speed limit coupled with erratic driving within one's own lane creates a reasonable, articulable suspicion for an investigatory stop); Galion v.Grillo (Jan. 21, 1993), 3d Dist. No. 3-92-38 ("jerking" or weaving of a vehicle within its own lane at approximately 2:30 a.m. adequately establishes reasonable, articulable suspicion for a stop). For these reasons, the trial court did not err when it denied Andrews' suppression motion.
 {¶ 14} Because the totality of the circumstances evidence a reasonable, articulable suspicion to effectuate an investigatory stop based on the facts of this case, we are not required to determine whether driving on the dashed white line dividing the northbound lanes of I-75 was a violation of the marked lanes statute, *Page 10 
which would provide probable cause for a traffic stop. The sole assignment of error is overruled.
 {¶ 15} The judgment of the Auglaize County Municipal Court is affirmed.
Judgment Affirmed.
 SHAW, P.J., and ROGERS, J., concur. *Page 1