OPINION
{¶ 1} Defendant-appellant, Jason A. Brandon (hereinafter "Brandon") appeals the judgment of the Logan County Court of Common Pleas denying his motion to suppress evidence. For the reasons that follow, we affirm.
 {¶ 2} On January 9, 2008, Brandon was indicted for possession of crack cocaine in violation of R.C. 2925.11(A), a felony of the second degree; resisting arrest in violation of R.C. 2921.33(A), a misdemeanor of the second degree; abduction with a firearm specification in violation of R.C. 2905.02(A)(2), a felony of the third degree; burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree; assault in violation of R.C. 2903.13, a misdemeanor of the first degree; and carrying a concealed weapon in violation of 2923.12(A), a misdemeanor of the first degree.
 {¶ 3} Brandon filed a motion to suppress the evidence obtained on November 2, 2007, which pertained to the possession and resisting arrest charges. A hearing was held on April 16, 2008. At the suppression hearing, the State only called Officer Scott Marlow, of the Bellefontaine police department, who was the initial officer that stopped Brandon on November 2, 2007. Officer Marlow testified that he had been driving through the downtown section of Bellefontaine, Ohio when he heard Chief Brad Kunze radio to dispatch asking for officers to investigate 132 South Detroit Street, also known as the post office area where a *Page 3 
liquor establishment known as Moore's Café was located. (Apr. 16, 2008 Tr. at 4). According to Chief Kunze's radio communication, he had observed a "black male subject wearing a dark hooded sweatshirt, hooded coat," at that particular location, and that he believed he had seen drugs in this person's hands, and that the person might also be under the influence. (Id.); (Defense's Motion to Suppress, Doc. No. 40). Officer Marlow testified that he went to investigate the Chief's observations and saw someone, later identified as Brandon, matching the Chief's description loitering in the northwest corner near Moore's Café. (Id. at 5). According to Officer Marlow's testimony, this particular area had a general reputation for "drug abusers, alcohol abusers, selling, using drugs, alcohol offenses, drug offenses, [and] fights." (Id.). To make sure there was no one else in the vicinity matching the Chief's description, Officer Marlow drove around the block. (Id.). After checking the area and not locating any other suspects matching Chief Kunze's description, Officer Marlow approached Brandon and told him that he was investigating a complaint that he may be under the influence. (Id. at 6). Brandon handed Officer Marlow his identification, and Officer Marlow testified that he had remembered that Brandon "used to live with a female, a Gloria Brown, at 212 Pearce where we've suspected drug activity repeatedly." (Id.). Then, Officer Marlow testified that the following actions occurred:
 [W]hen he handed me his ID, he placed his hands back in his pockets. I asked him not to do that because — for officer safety. *Page 4 I said, you know, I don't want you to do that, it doesn't make me feel safe. So he took his hands out of his pockets. By the time I was done radioing in his identification and looked back up, Detective Salyer had been there by then, and he had put his hands back in his pockets. Detective Salyer then spoke to him and — I told him to take his hands out of his pockets again. Detective Salyer then told him — he asked him, Do you have any weapons on you? He denied it. And he said, Well, we're going to pat you down for weapons.
 * * *
 Well, as soon as Detective Salyer told him that, he took a step pack [sic] and started saying, "You aren't searching me. You're not going to search me." And continued on that — those statements and pulled his hands out of his pockets. He had two items in his hands. At the time we didn't know what they were. They were black. We could tell that. I didn't think it was a gun or anything like that, but I didn't know exactly what they were. Found out later it was a cell phone charger, and I don't remember what the other item was. But, he — just kept backing up from Detective Salyer. We're not going to search, just pat you down to make sure we're safe and continue with our investigation. This all took place within a minute, so —
 * * *
 We were — he put his hands on his car as we requested, and Detective Salyer began to pat him. And I was standing to Detective Salyer's right. Detective Salyer's on his left side and then moved to his right. At the time Mr. Brandon was wearing that long — a long, hooded sweatshirt which came down — it was open, it was unzipped, but it came down to his mid thigh, I would say, and it was in the way of his — it was hanging out in front of his right front pocket. Detective Salyer — based on my observation — went to pat that right front pocket and just kind of moved that jacket aside, kind of like this (indicating), to feel his pocket. When he did that, I could see two plastic baggies outside the — sticking outside of his right front pocket. *Page 5 
 Obviously, my experience being people carrying sandwich baggies in their pocket they could possibly contain drugs.
 I alerted Detective Salyer, I see two baggies in his front pocket. As soon as I said that, Mr. Brandon tore away from Detective Salyer. Detective Salyer had a hold of his coat, was refraining him when he tore away. I seen the two baggies get thrown up in the air, and I can see them land on the ground. I can see they contain a white rock substance, you know, most likely crack cocaine.
(Id. at 6-9). Officer Marlow stated that they then placed Brandon under arrest. (Id. at 9). Officer Marlow testified that the whole event had taken about a minute and a half. (Id.).
 {¶ 4} Ultimately, the trial court denied Brandon's motion to suppress. On April 21, 2008, Brandon entered a no-contest plea to the possession charge, and the State dismissed the remaining charges. The trial court found Brandon guilty of one count of possession of crack cocaine in violation of R.C. 2925.11(A), a felony of the second degree, and, on June 2, 2008, the trial court sentenced Brandon to a mandatory four year prison term and imposed a $7,500.00 fine.
 {¶ 5} Brandon now appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR The trial court erred when it denied Mr. Brandon's motion to suppress evidence obtained during a warrantless search conducted after an illegal Terry stop. Fourth and Fourteenth Amendments to the United States Constitution, and Section 14, Article I of the Ohio Constitution. April 18, 2008 Judgment Entry. *Page 6 
 {¶ 6} Brandon argues that the evidence obtained on November 2, 2007 was the result of an illegal search and seizure; and thus, the illegally obtained evidence should have been suppressed. Specifically, Brandon claims that the State failed to present sufficient evidence to support Officer Marlow's decision to perform a Terry stop, Officers Marlow and Salyer illegally expanded the search, and the evidence that was seized was not in plain view.
 {¶ 7} A review of the denial of a motion to suppress involves mixed questions of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. SeeState v. Carter (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. Burnside, 2003-Ohio-5372, at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539.
 {¶ 8} The Fourth and Fourteenth Amendments to the United States Constitution generally prohibit warrantless searches and seizures. Additionally, any evidence that is obtained during an unlawful search or seizure will be *Page 7 
excluded from being used against the defendant. Mapp v. Ohio (1961),367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081. A person'sFourth Amendment rights are implicated whenever a police officer "accosts an individual and restrains his freedom to walk away." Terry v. Ohio
(1968), 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889. Generally, when a police officer conducts a warrantless search of an individual, the officer must have probable cause, or in other words, he must believe "`that there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Carlson (1995),102 Ohio App.3d 585, 600, 657 N.E.2d 591, quoting Illinois v. Gates
(1983), 462 U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed.2d 527. However, even in the absence of probable cause, a police officer may temporarily detain an individual when he has reasonable suspicion that the individual has or is engaging in criminal activity. State v. Bobo
(1988), 37 Ohio St.3d 177, 178-79, 524 N.E.2d 489, citingTerry, 392 U.S. at 21-22. This detention is known as an investigatory or "Terry" stop, and reasonable suspicion exists when the officer can point to "`specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'"State v. Stephenson, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶ 16, quoting Bobo, 37 Ohio St.3d at 178. Ultimately, if an officer has reasonable articulable suspicion, they may briefly detain an individual in order to investigate the circumstances that invoked the suspicion, but the detention must be *Page 8 
"reasonably related in scope" to the suspicion and "cannot be excessively intrusive." State v. Hackett, 6th Dist. No. L-06-1117,2007-Ohio-1868, ¶ 12, quoting Terry, 392 U.S. at 11, 20.
 {¶ 9} Brandon first argues that Officer Marlow did not have reasonable suspicion to briefly detain him on November 2, 2007. Brandon claims that Officer Marlow's reasonable suspicion came from Chief Kunze's dispatch, which would have been a valid source for the detention; however, the State failed to meet its burden of proving Chief's Kunze's dispatch was reliable at the suppression hearing. Brandon cites City of Maumee v.Weisner (1999), 87 Ohio St.3d 295, 298, 720 N.E.2d 507, and State v.Taylor (July 10, 1998), 2nd Dist. No. 16847, at *4, in support of his position. In addition, Brandon claims that once Officer Marlow believed Brandon was not under the influence, the stop should have ceased. Therefore, Brandon claims that the evidence should have been suppressed. We disagree.
 {¶ 10} At a suppression hearing, the State bears the burden of establishing that a warrantless search or seizure falls within one of the exceptions to the warrant requirement. Weisner,87 Ohio St.3d at 297. In this case, the State had to show that one of the officers had reasonable suspicion to believe Brandon was engaging in criminal activity. Id. However, "[a] police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, *Page 9 
upon a police dispatch or flyer." Id., citing United States v.Hensley (1985), 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604. Thus, Officer Marlow personally did not have to have reasonable suspicion, but could have relied on another reliable source of information.
 {¶ 11} Nevertheless, Brandon points to the cases that state when an officer relies solely on a dispatch, the State must demonstrate at the suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. Weisner,87 Ohio St.3d at 298; Taylor, 2nd Dist. No. 16847, at *4. We acknowledge that holding, but we find this particular case distinguishable from the dispatch cases cited by Brandon.
 {¶ 12} In Weisner and Taylor, the reasonable articulable suspicion came from informants who had both called into the police dispatcher about the defendants' suspicious activity. Weisner,87 Ohio St.3d at 296; Taylor, 2nd Dist. No. 16847, at *1. Instead of relying solely on the information that had been given to dispatch from an outside source and then transmitted over the radio to the officer, like inWeisner or Taylor, here it was the chief of police who had made the radio announcement himself to the officers. In State v. Henderson, the Ohio Supreme Court held that "information supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest." (1990),51 Ohio St.3d 54, 57, *Page 10 554 N.E.2d 104. Certainly if officers can rely on other officer's direct information for purposes of probable cause, they can also use the information for purposes of the lower standard of proof, reasonable articulable suspicion. Thus, Chief Kunze's information was, as to Officer Marlow, by itself reliable and its reliability did not need to be demonstrated at the suppression hearing.
 {¶ 13} Next we address Brandon's argument that Officer Marlow lacked reasonable suspicion to further detain him once he no longer believed Brandon was under the influence. At the suppression hearing, Officer Marlow testified that he had told Brandon he was investigating a claim that Brandon was under the influence, but admitted on cross-examination that he did not suspect that Brandon was under the influence. While there was a legitimate basis for investigating whether Brandon was under the influence, [1] we believe there was enough reasonable suspicion to believe Brandon was engaging in drug activity that justified briefly detaining Brandon.
 {¶ 14} The trial court thoroughly considered the evidence and testimony given at the suppression hearing. After reciting the facts in a detailed analysis, the trial court held:
 In this case there is ample testimony which is undisputed that this block of South Detroit Street near the Moore's Café is well known for drug transactions. The officer's testimony about the *Page 11 defendant loitering around also should raise suspicions of the defendant being engaged in drug activities. Finally, the officers were aided in this case by the observation by the chief of police that he had seen defendant and even believed that he had drugs in his hands. Given all of these circumstances, the officers had a reasonable suspicion of criminal activity.
(JE Apr. 16, 2008, Doc. No. 58 at 2-3).
 {¶ 15} Besides Chief Kunze's reliable dispatch, Officer Marlow testified that he found Brandon "loitering" in a well known area of drug activity. (Apr. 16, 2008 Tr. at 5). And in addition to Brandon matching the Chief's description, Officer Marlow circled the block to make sure Brandon was the only individual in the designated area that matched the Chief's description. (Id.). Therefore, based on this evidence at the suppression hearing, we believe that the trial court's findings were supported by competent, credible evidence.
 {¶ 16} In addition, we also believe that the facts satisfy the applicable legal standard. McNamara, 124 Ohio App.3d at 710. An officer's "reasonable suspicion" is determined based on the totality of the circumstances. State v. Andrews, 3d Dist. No. 2-07-30,2008-Ohio-625, ¶ 8, citing State v. Terry (1998), 57 Ohio App.3d 253,257, 719 N.E.2d 1046, citing State v. Andrews (1991), 57 Ohio St.3d 86,87, 565 N.E.2d 1271. "`Specific and articulable facts' that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances."State v. Purtee, 3d Dist. *Page 12 
No. 8-04-10, 2006-Ohio-6337, ¶ 9, citing State v. Gaylord, 9th Dist. No. 22406, 2006-Ohio-2138, ¶ 9, citing Bobo, 37 Ohio St.3d at 178-79;State v. Davison, 9th Dist. No. 21825, 2004-Ohio-3251, ¶ 6.
 {¶ 17} Here, there is evidence that Chief Kunze personally radioed officers that he had observed a "black male subject wearing a dark hooded sweatshirt, hooded coat," and that he believed he had seen drugs in this person's hands and he wanted officers to investigate. (Apr. 16, 2008 Tr. at 4). Furthermore, the particular area where the suspect was located, Moore's Café, had a reputation for drug activity. When Officer Marlow went to look for a person matching the Chief's description around Moore's Café, he discovered Brandon, who was the only one fitting the description around the area. Moreover, Officer Marlow saw Brandon "loitering" this well known drug area. Therefore, based on the evidence in the record, we believe that the facts supported the conclusion that there was reasonable suspicion to suspect Brandon was engaging in criminal activity and to stop him and investigate these suspicious circumstances. Purtee, 2006-Ohio-6337, at ¶ 9; McNamara,124 Ohio App.3d at 710.
 {¶ 18} Brandon next argues that there was no reason for the officers to search Brandon for weapons because there was "no basis for a belief that Brandon was armed and dangerous." (Appellant's Brief at 6). Additionally, Brandon argues that the only basis for conducting the search was the fact that Brandon was *Page 13 
in a known drug area, which by itself, was insufficient to justify the search. We find Brandon's arguments lack merit.
 {¶ 19} In addition to having reasonable articulable suspicion to briefly stop an individual to conduct an investigation surrounding the suspicious circumstances, Terry also allows officers to conduct a limited search of the individual for weapons. "[A] law enforcement officer may conduct a limited search of the detainee's person, in the absence of an arrest, for the protection against concealed weapons if the officer has formed a reasonable conclusion that `the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'" State v.Dieter (Oct. 30, 1998), 3d Dist. Nos. 13-98-6, 13-98-7, 13-98-9, at *4, quoting Terry, 392 U.S. at 24. Again, an officer's "reasonable suspicion" is determined based on the totality of the circumstances.Andrews, 2008-Ohio-625, at ¶ 8, citing Terry, 57 Ohio App.3d at 257, citing Andrews, 57 Ohio St.3d at 87.
 {¶ 20} Here, there was more than just the general reputation of the neighborhood where Brandon was located to support the officer's reasonable suspicion that Brandon may have weapons on his person. First, there was evidence that the chief of police had observed a "black male subject wearing a dark hooded sweatshirt, hooded coat," and that he believed he had seen drugs in this person's hands and he wanted officers to investigate. (Apr. 16, 2008 Tr. at 4). *Page 14 
There was evidence that Brandon, who was the only one in the area that matched the chief's description, was loitering around Moore's Café, an area that had a general reputation for "drug abusers, alcohol abusers, selling, using drugs, alcohol offenses, drug offenses, [and] fights." (Id. at 5). However, Officer Marlow also testified that Brandon kept putting his hands into his pockets, even after being told not to do so, because it did not make Officer Marlow feel safe. (Id. at 7). Furthermore, Officer Marlow testified that when he read Brandon's identification, he remembered that he had dealt with Brandon in the past regarding outstanding warrants and that he knew Brandon used to live with a female in a house known for drug activity. (Id. at 6).
 {¶ 21} Given the totality of the circumstances, we believe that Officer Marlow and Detective Salyer acted reasonably by searching Brandon for weapons.
 {¶ 22} Brandon also argues that the officers "illegally expanded" theTerry search when Detective Salyer moved his sweatshirt to pat down his right front pocket. However, the purpose of the warrantless search permitted by Terry is "to allow a police officer to protect himself and to pursue his investigation without fear of violence." State v.Walker (Jan. 15, 1999), 2nd Dist. No. 98 CA 57, at *9. Thus, the officer conducting the search may "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry, 392 U.S. at 24. Brandon was wearing a long-hood *Page 15 
sweatshirt that "came down to his mid-thigh." (Apr. 16, 2008 Tr. at 9). Based on the underlying principle of a Terry search and Brandon's large sweatshirt that covered him down to his mid-thighs, we believe it was reasonable for Detective Salyer to move Brandon's sweatshirt in order for him to pat down his right front pocket for a weapon.
 {¶ 23} Finally, we also are not persuaded by Brandon's argument that the evidence that was seized was not in plain view because the incriminating nature of the baggies was not immediately apparent. Whenever police officers are in a lawful position, they may seize any incriminating items that they view from that lawful position. State v.Johnson (Dec. 8, 2000), 3d Dist. Nos. 3-2000-15, 3-2000-16, at *5, citing State v. Halczyszak (1986), 25 Ohio St.3d 301, 496 N.E.2d 925;Ker v. California (1964), 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. Here, Officer Marlow testified that when Detective Salyer moved Brandon's sweatshirt to pat down his right front pocket, he observed "two plastic baggies outside the — sticking outside of his right front pocket." (Apr. 16, 2008 Tr. at 8-9). Based on his experience as a police officer, Officer Marlow stated that the incriminating nature of the baggies, that they contained drugs, was apparent to him. (Id.). Furthermore, after Officer Marlow notified Detective Salyer of the baggies in Brandon's pocket, Brandon threw the baggies into the air and tried to run away. (Id.). When the baggies landed on the ground, Officer Marlow could see that the *Page 16 
baggies contained white rocks, or crack cocaine. (Id.). After considering all this evidence, the trial court found that "[i]n this instance Officer Marlow saw the drugs in plain view and then the defendant tossed the same." (JE Apr. 16, 2008, Doc. No. 58 at 3).
 {¶ 24} We believe that there was sufficient evidence to support the trial court's findings that Officer Marlow saw the drugs in plain view and that the facts support the legal conclusion that the drugs were found in plain view.
 {¶ 25} Brandon's sole assignment of error is, therefore, overruled.
 {¶ 26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] In Brandon's motion to suppress, he acknowledges that Chief Kunze believed he had seen drugs in this individual's hand and that "he might be under the influence." (Defense's Motion to Suppress, Doc. No. 40). *Page 1