[Cite as *State v. Williamson*, 2017-Ohio-7363.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

KIMBERLY A. WILLIAMSON,

    PLAINTIFF-APPELLANT,           CASE NO. 4-17-06

    v.

BUREAU OF MOTOR VEHICLES,        O P I N I O N

    DEFENDANT-APPELLEE.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,           CASE NO. 4-17-07

    v.

KIMBERLY A. WILLIAMSON,        O P I N I O N

    DEFENDANT-APPELLANT.

**Appeals from Defiance Municipal Court**
**Trial Court Nos. CI1700049 and TRC 1605231**

**Judgments Affirmed**

**Date of Decision: August 28, 2017**

APPEARANCES:

    *Danny A. Hill, II* for Appellant

    *Carson L. Slade* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Kimberly A. Williamson ("Williamson"), appeals the March 7, 2017 judgment entry of the Defiance Municipal Court in case number TRC1605231 convicting her of operating a motor vehicle while under the influence of alcohol or drugs of abuse ("OVI"), a marked-lanes violation, and an expired-tags violation after her motion to suppress evidence was denied. Williamson also appeals the February 22, 2017 judgment entry of the Defiance Municipal Court in case number CI1700049 denying her appeal of an administrative license suspension ("ALS") following her OVI arrest. We affirm.

{¶2} On November 5, 2016, at approximately 1:14 a.m., Ohio State Highway Patrol Trooper Matthew J. Gardner ("Trooper Gardner") initiated a traffic stop of the vehicle operated by Williamson after Trooper Gardner observed Williamson commit marked-lanes violations while travelling on State Route 281 in Defiance County. (Feb. 10, 2017 Tr. at 14-15). After Trooper Gardner stopped Williamson, he detected that her vehicle's registration was expired. (*Id.* at 15). Following Williamson's refusal to submit to chemical testing to determine her level of intoxication, she was arrested and charged with OVI in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, operating a vehicle with an expired registration in violation of R.C. 4503.11, a fourth-degree misdemeanor, and the failure to drive within the marked lanes in violation of R.C. 4511.33, a minor

-2-

misdemeanor. (Case No. TRC1605231 Doc. No. 1). Because Williamson refused chemical testing, her license was administratively suspended. (Case No. TRC1605231 Doc. No. 2).

{¶3} On November 9, 2016, Williamson appeared and entered pleas of not guilty. (Case No. TRC1605231 Doc. No. 3). On January 20, 2017, Williamson filed a motion to suppress evidence arguing that Trooper Gardner lacked a reasonable, articulable suspicion to believe that she committed a marked-lanes violation. (Case No. TRC1605231 Doc. No. 17). That same day, Williamson appealed her ALS. (Case No. CI1700049 Doc. No. 1). After a hearing on February 22, 2017, the trial court denied Williamson's motion to suppress evidence. (Case No. TRC1605231 Doc. No. 20). Because the trial court denied Williamson's motion to suppress evidence after concluding that Trooper Gardner had a reasonable, articulable suspicion to believe that she committed a marked-lanes violation, the trial court denied Williamson's ALS appeal. (Case No. CI1700049 Doc. No. 4).

{¶4} On March 7, 2017, a change-of-plea hearing was held. (Mar. 7, 2017 Tr. at 35); (Case No. TRC1605231 Doc. No. 22). Pursuant to a negotiated plea agreement, Williamson withdrew her pleas of not guilty and entered no-contest pleas to the charges. (*Id.*); (*Id.*). The trial court accepted Williamson's no-contest pleas, found her guilty, and sentenced her based on the joint-sentencing

recommendation of the parties. (*Id.* at 40-41); (Case No. TRC1605231A Doc. No. 22); (Case No. TRC1605231B Doc. No. 1); (Case No. TRC1605231C Doc. No. 1).[1] The trial court sentenced Williamson to 180 days in jail, suspended 170 of those days, and ordered her to pay a $750 fine as to the OVI charge, to pay a $25 fine as to the marked-lanes charge, and to pay court costs as to the expired-tags charge. (*Id.* at 40-41); (*Id.*); (*Id.*); (*Id.*).

{¶5} Williamson filed notices of appeal on March 24, 2017 in case number TRC1605231 and case number CI1700049. (Case No. TRC1605231 Doc. No. 25); (Case No. CI1700049. Doc. No. 5). Because the outcome of Williamson's ALS appeal is contingent on our disposition of Williamson's appeal in her traffic case, the cases were consolidated. Williamson raises one assignment of error for our review.

### Assignment of Error

**The Trial Court Erred in Failing to Suppress Evidence, and Denying Appellant's Administrative License Suspension Appeal, as the Standard of Reasonable Articulable Suspicion Required for the Traffic Stop Was Not Met.**

{¶6} In her assignment of error, Williamson argues that the trial court erred by denying her motion to suppress evidence. In particular, she argues that the trial

---

[1] For purposes of disposition, the trial court's clerk created separate dockets for the three charges under case number TRC1605231—TRC1605231A, TRC1605231B, and TRC1605231C. The only document included in the dockets for case numbers TRC1605231B and TRC1605231C is the judgment entry of conviction and sentence. (*See* Case No. TRC1605231B Doc. No. 1); (Case No. TRC1605231C, Doc. No. 1). All other documents related to case numbers TRC1605231B and TRC1605231C are included in the record for case number TRC1605231A.

court erred by concluding that Trooper Gardner had a reasonable, articulable suspicion to believe that she committed a marked-lanes violation. Because she argues that Trooper Gardner lacked a reasonable, articulable suspicion to believe that she committed a marked-lanes violation, Williamson also contends that the trial court erred by denying her ALS appeal.

{¶7} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶8} "[I]n order to constitutionally stop a vehicle, an officer must, at a minimum, have either: (1) a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent; or (2) a reasonable suspicion, supported by specific and articulable facts, that the

vehicle should be stopped in the interests of public safety." *State v. Anthony*, 3d Dist. Seneca No. 13-09-26, 2009-Ohio-6717, ¶ 10, citing *State v. Moore*, 3d Dist. Marion No. 9-07-60, 2008-Ohio-2407, ¶ 10, citing *State v. Andrews*, 3d Dist. Auglaize No. 2-07-30, 2008-Ohio-625, ¶ 8, citing *State v. Chatton*, 11 Ohio St.3d 59, 61 (1984), and citing *State v. Purtee*, 3d Dist. Logan No. 8-04-10, 2006-Ohio-6337, ¶ 9, citing *State v. Norman*, 136 Ohio App.3d 46, 53-54 (3d Dist.1999).

{¶9} "An officer's 'reasonable suspicion' is determined based on the totality of the circumstances." *Id.* at ¶ 11, citing *Moore* at ¶ 11, citing *Andrews* at ¶ 8, citing *State v. Terry*, 130 Ohio App.3d 253, 257 (3d Dist.1998), citing *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991). "'"Specific and articulable facts" that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.'" *Id.*, quoting *Purtee* at ¶ 9, citing *State v. Gaylord*, 9th Dist. Summit No. 22406, 2005-Ohio-2138, ¶ 9, citing *State v. Bobo*, 37 Ohio St.3d 177, 178-79 (1988), and citing *State v. Davison*, 9th Dist. Summit No. 21825, 2004-Ohio-3251, ¶ 6.

{¶10} Trooper Gardner testified that he stopped Williamson's vehicle for violating R.C. 4511.33, which provides, in relevant part:

(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal

corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1)   A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

R.C. 4511.33(A)(1).

{¶11} At the suppression hearing, Trooper Gardner testified that he stopped Williamson after observing her commit two marked-lanes violations along with observing her weaving within the lane. (Feb. 10, 2017 Tr. at 15, 19).  He testified, "I noticed the vehicle, when it went across the bridge, the vehicle, I observed it weaving within the lane, and then I observed a lane violation, one time over the centerline by a tire width and one time over the white edge line by a tire width." (*Id.* at 15).  (*See also id.* at 18).  The State admitted as evidence the recording from Trooper Gardner's dashboard camera, which was played for the trial court.  (*Id.* at 17).   Trooper Gardner admitted that Williamson's marked-lanes violations— namely, that Williamson's tire was over the centerline by a tire width and over the white fog line by a tire width—do not appear as visible on the dashboard-camera video as he witnessed while following behind Williamson's vehicle.  (*See id.* at 18, 20-22, 25).  He explained,

My car is one of the older vehicles. It's not equipped with the high def [sic] camera that some of the newer cars have. There's times where if it's raining or poor lighting, it will just be black and white. There's glare. I mean, you can see there, you can't even see the, you can't even make out the license plate there on the video. Whereas me, I'm sitting in my car, I mean I just called [the license plate] in. You can't even tell what state it is. * * * Obviously, what we're seeing on the video here is not as clear as what my own eyes are seeing, and what I'm testifying to[.]"

(*Id.* at 18-19).

{¶12} According to Trooper Gardner, he stopped Williamson based on an issue of safety since her vehicle was "coming up on top of [a] hill" and Trooper Gardner could not see "what was coming down from the other side [of the hill]." (*Id.* at 15-16). (*See also id.* at 18). Trooper Gardner indicated that (1) there was minimal traffic at the time he stopped Williamson, (2) there were no adverse weather conditions, and (3) there were no pot holes or other obstructions in the roadway which would have caused her to leave her lane of traffic. (*Id.* at 14-15).

{¶13} Based on that evidence, the trial court found Trooper Gardner's testimony persuasive and concluded that he had a reasonable, articulable suspicion

to believe that Williamson committed a marked-lanes violation to justify the traffic stop. In particular, the trial court noted, Trooper Gardner testified

> that the video was not as clear as what he could see, but it's what [law enforcement has] to work with.
>
> [Trooper Gardner] also pointed out that as observed from the video, the registration of the vehicle was not able to be seen as to numbers, letters, or even the state of registration; however, he can be heard reading the information to the dispatcher over the radio. Therefore, he could clearly see what the observers in viewing the video could not.
>
> Upon cross examination, defense counsel asked where the tire crossed the line, and the trooper noted what he had seen and gave the corresponding time stamp noted on the video as to when he had observed the crossing of the marked lines.

(Case No. TRC1605231 Doc. No. 20).

{¶14} On appeal, Williamson challenges the trial court's legal conclusion that she committed a marked-lanes violation based on this court's decision in *State v. Shaffer*. 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581. In *Shaffer*, we concluded that the evidence in the record did not support a reasonable, articulable suspicion to justify the traffic stop of Shaffer based on a marked-lanes violation

where the tires of Shaffer's vehicle were on the white fog line without evidence that it was not practicable for Shaffer to remain in her lane of travel or evidence that she travelled outside her lane for safety purposes. *Id.* at ¶ 26. In analyzing the requirements of R.C. 4511.33, we stated:

> This conclusion stems in part from the fact that a sudden deviation from the lane of travel, where there is nothing in the surrounding circumstances to indicate why it was not practicable for the driver to remain within the lane, could in itself raise a legitimate safety concern sufficient to constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) in the right case.
>
> At the same time, we also recognize that there could always exist something in the surrounding conditions or circumstances that raises a safety concern regarding the driver's deviation from the lane that completely obviates any need to address the issue of the driver's practicability in maintaining the lane of travel, all of which could likewise independently constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1).

*Id.* at ¶ 24-25. However, we need not reach Williamson's argument under *Shaffer* because the trial court concluded that Trooper Gardner had a reasonable, articulable suspicion to believe Williamson committed a marked-lanes violation based on

Trooper Gardner's testimony that he witnessed her vehicle cross the centerline by a tire width and the white fog line by a tire width.[2] *See Anthony*, 2009-Ohio-6717, at ¶ 12 ("'[A] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving.'"), quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 25.  In addition, Trooper Gardner's testimony reflects that there was nothing in the traffic, road conditions or weather to indicate that remaining within the lane was not practicable.

{¶15} The trial court's factual conclusion—that Williamson committed a marked-lanes violation when her vehicle crossed the centerline by a tire width and the white fog line by a tire width without a practicable reason to do so—is supported by competent, credible evidence—Trooper Gardner's testimony, which the trial court found credible.  *See State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 24, quoting *State v. McClellan*, 3d Dist. Allen No. 1-09-21, 2010-Ohio-314, ¶ 38 ("'A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop.'").  Although it is unclear from the dashboard camera whether Williamson's vehicle crossed over the lines as Trooper Gardner testified, Trooper Gardner's testimony that he had a better view of

---

[2] We continue to decline adopting or endorsing the "tire rule," which is recognized by other Ohio appellate districts.  *See State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, ¶ 29.  *See, e.g.*, *State v. Parker*, 6th Dist. Ottawa No. OT-12-034, 2013-Ohio-3470; *Wickliffe v. Petway*, 11th Dist. Nos. 2011-L-101, 2011-L-102, 2012-Ohio-2439.

Williamson's vehicle than the view depicted by the dashboard camera is supported by the video evidence. That is, Williamson's license plate is indecipherable on the video; however, Trooper Gardner can be heard reading the license-plate information to a dispatcher over his radio. Indeed, in making its credibility determination, the trial court weighed that fact in favor of finding Trooper Gardner's testimony credible. As such, based on Trooper Gardner's testimony, the trial court did not err by denying Williamson's motion to suppress evidence.

{¶16} Williamson also appeals the trial court's denial of her ALS appeal. However, Williamson's ALS terminated when she was convicted after entering a no-contest plea to the OVI offense. *Columbus v. Zimmerman*, 10th Dist. Franklin Nos. 14AP-963 and 14AP-964, 2015-Ohio-3488, ¶ 11, citing R.C. 4511.191(B)(2) and *State v. Gonzaliz*, 5th Dist. Stark No. 2013CA00077, 2013-Ohio-5309, ¶ 19. Based on our determination above, Williamson's argument is not well taken.

{¶17} Williamson's assignment of error is overruled.

{¶18} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**